Good morning, Your Honors. If it pleases the Court, my name is Dennis Reardon, and I represent Appellant Steele in this matter. There are, of course, fact and legal questions in the case that are case-specific, but the lead issue is really one of pure law, one of pure procedural law, and that is the review of the district court's ruling in denying Appellant Steele's new trial motion and claim of ineffective assistance, timely brought under Rule 33b2 on the ground of ineffective assistance of counsel, denying it on the ground that it is improper for a district court to hear a claim of ineffective assistance of counsel on a new trial motion. That ruling is without support in the law. It is illogical, and from a policy point of view, it makes absolutely no sense. The proper rule should be that if, if a district court is presented with a timely new trial motion raising a claim of ineffective assistance of counsel, it should resolve that on the new trial motion rather than relegating the defendant to his remedies at 2255. Is your argument that the district court erred by not recognizing he had that discretion? Absolutely, Your Honor. The district court, that's the first part of the argument. My argument is that the district court did refuse to recognize that discretion in this sense. The court said it was improper. It said, I should say, the court said the proper way to bring this was by a 2255 motion. Your Honor, if I was so silly as to address you by your first name during this oral argument, and you were to say to me quite correctly, Mr. Reardon, the proper way to address me is by Judge Kristin, you would have told me that what I did was improper. And what the district court in this case did was say to counsel, of successor counsel, it was improper of you to raise this on a new trial motion. That makes no sense for these reasons. One, if there are factual questions to be resolved on an ineffective assistance of counsel claim, it obviously makes sense to resolve them soon after the trial rather than years later. Secondly, it makes it more likely that the district court judge who heard the case is going to be available to hear the claim rather than possibly relegating it to a different judge much later. So what that tells me is that depending on the facts and what's in the record, it might be appropriate to hear it, and it might not. And that's a matter of discretion under our case law. The court had the discretion to do that. But, counsel, I'm concerned about this word proper, because I think it could have had two meanings. It could have meant I will not permit you, this is not permitted, which is, I think, your argument. Or it could have meant, you know, on this record, it's not appropriate for me to go forward, it needs to wait for further development. And so specifically, I'd like to call your attention to the case authority that the case authority has in its unpublished case, U.S. v. Ross, and it, in turn, cites Mrs. Kienes' published decision from our circuit in 1992. We emphasize that there is no fixed rule against determining the ineffectiveness question on direct appeal where the record so permits, which is your point. Rather, the decision to defer resolution of an ineffective assistance of counsel claim is a discretionary one and depends upon the content of the record.      that the case authority has in its unpublished case, U.S. v. Ross, and it, in turn, depends upon the content of the record in this particular case. I forgive that lengthy quote, but my point is that since he cited that case, how would I – what's your best argument for your position that he didn't recognize he had discretion? Your Honor, that line of cases deals with situations in which this Court is presented with an IAC claim, which almost always it should reject because the record for the IAC claim wasn't developed by trial counsel, who is usually on a new trial motion, the same counsel who's arguably ineffective. And so this Court says you're going to have to develop the record as to tactics and so forth on a 2255. There are rare situations like Alfarine where the record is sufficient for this Court to rule. However, however, there is absolutely no reason why a district court judge who has successor counsel in there, as in the Brown case from the Second Circuit, shouldn't hold the hearing then. But he's not obligated to do so. Even your Second Circuit case doesn't obligate him to do so. It does in this sense, Your Honor. It does unless there is a conceivable reason to do it later, and there is none. Let me point out to you. Hold on just a second. You're saying that's the only way that it would be proper is if there was some conceivable reason for him to do it later, otherwise he must do it right then and there? It would be an abuse of discretion for this reason, Your Honor. And this is an important point. The defendant has a right to counsel on the new trial motion. And this Court has held in DeMauro that the trial judge must appoint successor counsel if a claim of ineffective assistance is raised on a new trial motion. The defendant has no right to counsel on a 2255. And furthermore, the standards of review of a – both in the district court and in this Court, of a new trial motion, a decision on it, are much different than they are on review of a 2255. In a nutshell, the district court has more discretion to grant a new trial motion, and this Court has to grant more respect to the grant of a new trial motion than it does on a 2255 motion. No question your client would have had a tougher burden, but we're talking about whether the district court judge exceeded his discretion in deciding not to take it up. And so let me just circle back, if I could, because I know this is terribly important to your client. Was there ever a time when your client was unrepresented? No, but there – I have no idea whether he will be represented on a 2255. He's been through a trial and an appeal. The Court gave – one, it used the word proper, and the court – Judge Kristin is saying maybe that could be interpreted two different ways. But he gave not a single reason why it shouldn't be heard that. And this is in a situation in which – Well, but he did give a reason, only I think you take issue with it and you are distinguishing it. I mean, he cited Ross, which cites this other case, which ultimately, I think, refers to the trial court's discretion. You're saying – I understand that traditionally these cases come up to the circuit and they're – we're being asked and we often say, no, it's better to be handled in the first instance with the trial court doing all of the evidence-taking and making sure it's a full record. This is a unique case because this was a motion made post – I mean, pre-judgment. And so the court had to look and see whether it was appropriate, proper, whatever, you know, the word, see whether it was appropriate for him to take it up at that time. I understand your argument that somehow based on the way that the judge worded this may give it some sort of inference that he wasn't sure, but those cases that he cites don't necessarily support that or certainly not definitively. I have another question for you. I'm just wondering, isn't this waived, your request for a hearing waived, because your request for a hearing before the trial court didn't occur until the reply brief in the district court? It didn't happen in the first – in the first brief. So I'm trying to figure out if that's not waived. Two things, Your Honor. One, bringing an IAC claim on a new trial motion is not unique. It's fairly common. I've done it any number of times. Number two, Your Honor, you've done it. That doesn't mean it's common. You've done it. That doesn't mean it's common. Pre-judgment? Pre-judgment? Absolutely. I've sat for 10 years as a district court, and I tell you, it does not happen that frequently. It may be – you are a very skilled counsel, and I mean, there's a reason that you're giving the best possible advice and practice to your clients, but it's just not that often that pre-judgment, someone is seeking a hearing on an ineffective assistance of counsel claim. Your case is unique. I mean, there was a compelling set of facts here that I can understand why this would be explored, but you don't have some – a lawyer being indicted, you know, around the time that the jury comes back in most cases. But, Your Honor, unique means sui generis, one of a kind. And this Court itself has issued its opinion saying that a district court should replace counsel and on a new trial motion bring in successor counsel in a demoral case. So this case, the Court has recognized that it is perfectly appropriate to do it and appoint counsel. Appropriate required? Because I think you're giving a required definition to proper and appropriate. But no court before this one has ever said it was improper to bring a – before the district court here. The authority that the district court cited does not support the proposition that it is improper to bring a IAC claim on a new trial motion. In Strickland, Your Honor, the United States Supreme Court said that IAC claims will be brought on new trial motions. That's the Supreme Court of the United States. The authority does support that proposition if in the trial court judge's discretion he makes the call that or she makes the call that the record doesn't support it. Well, but, Your Honor, we have an apparently erroneous, at least erroneously framed ruling that it is – that the proper way to do it is 2255, which is not true. They're equally – Have it best and ambiguously absconded. Can counsel say, excuse me, Your Honor, with all due respect, you're mistaken. You can't hear this motion now. It's a matter of discretion. The Court issued a written ruling just prior to sentencing, but I haven't answered Judge McGeeh's question. Answer my question. Your Honor, what I'm saying is the ruling came down at the same time as sentencing. There was no opportunity for counsel to say, hey, you're really wrong on whether you can consider this. So the answer is – I mean, I wasn't there. I don't know what happened. The answer is, no. You weren't there either. Well, I have the record. No, he didn't, and no, he had no opportunity to do it. But Judge McGeeh, your question was – On the reply. Right. The hearing wasn't asked until the reply. But, Judge McGeeh, you never know whether an evidentiary hearing is appropriate or not until the reply brief. That is, for this reason, you put in a set of facts, you support them with declarations. If the government comes in and says, we're not contesting the facts, we're saying as a matter of law it's insufficient, you don't need an evidentiary hearing. If the government comes in and contests the facts, then in a reply brief you say, well, we need an evidentiary hearing. Because you – that's your response, that you didn't need to ask until the reply brief, and so that's why it's not waived? Absolutely. Absolutely. Because it's only then that the issue of whether there are facts in issue underlying the motion is appropriate. But the point that I make is – What do you do about defense lawyers that set up a record of their own incompetence? As a tactic. Well, it's – And it goes on quite often. Well, that – Doesn't it? Doesn't it? No, I don't believe – if you get hit with an incompetency finding by a court, certainly in the State of California, you are reported to the State bar. So I do not think that that is common, Your Honor. No, no, that's correct either. But it would require a factual explanation to get to that. But let me say this. We've got at least this. We've got a statement that the Court may have been using the wrong rule by saying that this was the only proper way to do it. We have no statement, not one statement, as to any reason why doing it later would be better than doing it now. What about the obvious one, which is that the trial court judge thought the record hadn't been developed? Well, but that's what an evidentiary hearing is for, Your Honor. But he doesn't – he's not – that's the point. He's not the one who advocates that the record hadn't been developed.    And so, to me, that's the question that's so important. Why was the district court judge obligated to take it up at that point? Because, because if you're in a situation unlike this Court, where it doesn't have a record, so it has to relegate somebody to 2255. What you're advocating for is you have a trial, the defendant is convicted. Then there's a motion for a new trial. And at that time, at that time, it's appropriate and best for the trial court to then take up the question whether defense counsel was incompetent or not. If, if new counsel comes into the case and raises a credible claim. And in this case, you want to have, then, almost two trials. Your Honor, this is going to be heard sometime. You're either going to relegate it back and we're going to have a hearing on the 22. That's right. But the way the system is geared is that it's, the way the system is geared is that you take it up after a collateral attack. That's not true, Your Honor. Because we have magistrates that go through those records and comb through them carefully. That's, I think that's what he's probably saying. Counsel, I think there's I don't think he means, oh, I can't do it. It means we've already got this set up. This is the way we do things. Not according to the Supreme Court in Strickland. And let me point this out. Let me point this out. We're now in a situation where Mr. McAllister is in jail, in prison. And our client has no right, unlike on a new trial motion, to counsel to represent him. He has no right to the resources that you have at the trial phase. He made a new trial motion. He did. Your guy? And by new counsel, raising a new trial motion and claiming ineffective assistance of Mr. McAllister. And let me just point this out. What is unique, Your Honor, is for a district court to have on the one hand said, I'm going to let this witness in, Mr. Pakun, because he's a key witness. And on the other hand, to have said on the record, the reason this man didn't testify is your fault, Mr. McAllister. And then we find out by the time of the new trial motion that he was being disbarred at the time. And we now know, and we would have found out if the motion had been heard and there had been an evidentiary hearing, that he was being taped by the United States government in undercover conversations at the very moment he was supposed to be representing his client. What relief are you seeking? I am seeking a remand, a reversal of the conviction, and a remand for the district court to hear the Rule 33 motion. Now. Now. And, Your Honor, if the Court says, even if we agree with you, Mr. Reardon, that that's the better rule, why do that in this case? The time is gone. You know, we can't change times. Mr. McAllister is in prison. And the point is, he would then have a right to counsel, and I cannot tell the Court that he otherwise he's in prison trying to do a 2255 without counsel. The Court would have to pay counsel to appoint counsel on the new trial motion. And secondly, Your Honor, why should he be deprived of the appropriate standards under Kellington and Alston, which were much more favorable to him than he would be before the district court on the 2255? It makes a huge difference. We're talking about depriving him of his constitutional right to have counsel raise the IAC claim for him. And finally, I know I'm over my time. I'll ask one minute at the end of it. The point that I made in my 28-day submission to this Court is that you complicate the 2255 process because he doesn't have a right to counsel there, and because he doesn't have a right to counsel there, the absence of counsel on the 2255 can give him a right under Supreme Court authority to bring a successor 2255 when he finally does get counsel. So it's a much more cumbersome process. And if this is denied in the – well, in this case it's complicated. In the future, if you deny the IAC and make the record there, then this Court has one case to hear on appeal as opposed to having multiple litigation on the 2255. This is a pretty unusual case, though. You know, that's a real reason why it should have been heard. Sotomayor, not according to Mr. Reardon. This happens all the time. Look, Steele was a criminal defense lawyer, right? And the allegation, and he's appealing his jury trial conviction for murder for hire and related charges. He hired his handyman, Fairfax, to kill his wife, Cindy Steele, and his mother-in-law. And then Fairfax attached a pipe bomb to Cindy's car and another to Steele's car as a decoy. When the attempt failed, Steele's threatened – this is, you know, part of the story that's in the record – Steele threatened to hire another hitman, and that hitman would then kill Fairfax, the first hitman, if Fairfax didn't follow through with killing Cindy. But, Your Honor. And then, you know, this would be – this is quite a story. Then Fairfax goes to the FBI, and then Fairfax's lawyer, in the meantime, is stealing his own client's money, right? No, no, that's not Fairfax's lawyer. That's my client's lawyer. It went into the trust account. My client's lawyer was committing Federal crimes while representing my client. Your Honor, I beg to clarify. Your client's lawyer? Why don't you answer my questions? You know, you may be a great trial lawyer, but sometimes your manners are not very good. I apologize, Your Honor. You know. So you're not going to convince me by raising your voice and blasting out. That's not going to work. I'm just asking you some questions. That's all. I'm not asking you to be funny. I stand chastened. I do not intend to be funny. I wasn't sure what question you were asking me, Your Honor. I was telling you, this was a very unusual case with all these lawyers mixed up in it. That's absolutely true. And all the rest that happened, and you have a judge there, and then you make  a judgment, and he says to you, the proper way is to bring this claim of ineffective assistance of counsel through collateral proceedings. That's what he said. Yes. He said it's the only way. He may have used the word improper, improperly. And he probably was saying the way that we generally do this is through collateral proceedings, because we have a whole system that's geared up to handle that matter. Your Honor, two things. One, when I said to Judge McGeeh that this was not unique, I just meant it's not unique to have IAC claims on 33b-2 motions. It certainly is unique in many other ways, including the fact that Cindy Steele, who's sitting in the courtroom, doesn't believe the government's case. And the key issue at trial --. But Cindy Steele is sitting in the courtroom, and she's what? The facts that you've described about the alleged murder of Cindy Steele are ones that Cindy Steele does not accept as being true. That's why we have a jury trial. And the key issue at the jury trial was the validity of the tapes, and it is indisputable that Mr. Steele's lawyer, after qualifying an expert, just absolutely screwed up and failed to present the expert according to the trial judge himself. And what we're saying is it makes a huge difference. These issues are going to be confronted, whether they're confronted on 2255 or Rule 33, and the difference is the deprivation of my client's constitutional right to have counsel, successor counsel, represent him on the claim of IAC. Counsel, I think you're right that there are times where a trial court judge should because if nothing else, as you say, somebody's going to be sitting in jail. I'm willing to accept that without any further discussion for my part. My question is why was it error for the trial judge to do what he did here, and specifically, I'm really bothered by what you just said. You seem to be focusing on the fact that this expert wasn't allowed to – he wasn't subpoenaed and he was off on vacation and whatnot. He was not subpoenaed, right.  And there had been a Daubert hearing earlier, and this trial court judge had seen and knew what that evidence would have been. Right. It wasn't that this expert could have testified that that wasn't Mr. Steele's voice or that that tape had been manufactured. Right. It was something less exculpatory than that. Be that as it may, this trial court judge would have had to make a finding that there was an IAC claim that had some merit. Right. And this trial court judge said, I didn't see anything that bothered me here. I'm paraphrasing. But he made a point of saying that he didn't feel that there had been IAC. No, he didn't, Your Honor. He said he wasn't aware of any ethical lapses in the court. There's a big difference between an ethical lapse and an IAC claim. And he said that's based only on what I saw in court, if you look at the statement. Well, what he saw in court – thank you for the question. I genuinely appreciate it. But what he saw in court, as opposed to the wire, apparently, that was happening because this individual was being investigated himself, what the trial court judge saw in court had everything to do with what that expert could have testified to had he not been on vacation, right? But the trial court said that if testimony came in about the inaccuracy of the voices, which it did from other witnesses, that this was relevant corroborating testimony, and when he chastened Mr. McAllister for not presenting it and said, your procrastination is not my emergency, he said that this was a key witness, and that was the reason he wouldn't allow the witness to be presented by videotape because it would deprive the prosecution of full cross-examination of the witness. So your response to my question is that if I go back and look at the record, what I see is that there was no IAC claim that had been presented to him at that point, and certainly none – that was when he allowed Mr. – the successor counsel into the – Mr. Hoyt into the case. There was no motion before him. The affidavits supporting the IAC claim were not before him at that point. And so – and so that's a very – in fact, the very fact that he looked at it and said this requires full factual development is an indication that he took it seriously. But there's no difference between holding an evidentiary hearing sooner rather than later, other than an evidentiary hearing sooner is more likely to be accurate, because it's not only Mr. Steele that's been in jail for a couple of years, it's Mr. McAllister. How do we – I don't even know that on a 2255, a jail defendant will be able to get that witness into court. Because I'm having a hard time gaining a word edgewise, I'm having a hard time getting my question answered. But you're just using the word it, because he took a look at it. And I don't know what you're referring to, counsel. I'm sorry, Your Honor. Me too. I'm trying to ask a question about – you just made a point about the trial court judge having something in front of him, or more to the point, not having something in front of him. I beg your pardon. And then, counsel, if you could just let me finish. And then you asked – you made the statement when he took a look at it. And my question is, what are you referring to? What was he looking at? When he said that he had not seen ethical lapses, that was at a hearing months before the new trial motion hearing. Right. That was at a hearing to allow Mr. Hoyt into the case. Right. When he said there – there has to be factual development, he had seen the new trial motion, which contained affidavits from, among other things, Mr. Hoyt – I'm sorry, Mr. McAllister admitting his own incompetence. Admitting in the other case that he had this lapse? No, no. In Mr. Steele's case. Vis-a-vis the expert? Yes. Okay. Thank you very much. And – Let me just ask a question. Is there anything in the record aside from this maybe failure to subpoena the expert that suggests Mr. McAllister provided ineffective assistance of counsel? Well, I think – I think that development could lead there. But let me be clear. We're basing it on the fact that – of the exclusion of the expert witness through Mr. McAllister's fault. And the failure to subpoena. That's what your sole focus seems to be. And I'm just trying to figure out if there's anything else. Yes. Yes. Yes. So the answer to my question – Is yet. No. No. Okay. Thank you. On this record, no. And I probably should sit down. And I will say in my 35 years before this Court, I have probably never been reprimanded as much as I have in this proceeding. I apologize. I apparently was overly enthusiastic and interrupted the Court in presenting the case. I sincerely apologize that. And I certainly hope that the short – The record will show you've never been reprimanded. All right? We'll type it up, save it up, whatever you want. It's got nothing to do with it. I just hope that the failings of counsel at this stage do not redound to the detriment of my client. Oh, no. If that were true – Not a good sentence to finish. We don't act that way. But we're just trying to get it at what's going on. And anyway. So what was the last point you made? Just state it quietly. The last point I think that I really emphasized was that the Court itself had said that this was a key witness when he excluded it based directly on the failure of Mr. McAllister to present the witness to the Court. That makes it certainly a claim that needs to be resolved as quickly as possible rather than one where the client years later is in jail without counsel attempting to raise it by a 2255. And what would that witness have testified to? Well, he would have – the Court ruled he would have corroborated the testimony of other witnesses that there was something defective in the recording, which, of course, was the key issue in the case. If the recordings were accurate, the evidence was overwhelming. The recording that purportedly captured your client's voice? Yes. I see. All three recordings? Where your client was talking to his wife. No. He was talking to Fairfax, who was at that point a government – Who was talking to Fairfax. Yes. And was there a point where your client was talking to his wife? Not a recorded conversation. I said something about the tape and don't identify a voice? Yes. Yes. I've got to remember 35 cases. And you just got – I hope you only got one. Judge Pegerson reminds me of a question I had. Just to clarify, this witness you're speaking of really only – doesn't go to the conversation that was tape recorded from the jail between his – your client and his wife, right? This is the artifact noise, the sound between Mr. Steele and Fairfax. Yes? Yes. Okay. And if I could just – and a follow-up question is, am I correct that the trial judge had heard this witness testify in a pretrial hearing about what – and knew what the substance of what this witness would and would not be able to testify to? The excluded witness. Right. Yes. Okay. And excluded meaning the guy on vacation. Pap, pap. Right. Well, the judge excluded in the sense that he then made a ruling that he couldn't testify by video. Okay. Fair enough. We're talking about the same person. And, by the way, how do you pronounce his name? Papscom? Papcoon, I would say. All right. But that's the same person that we're talking about, and his testimony only went to the Fairfax conversation? Yes. Thank you. However, I would just make this point. If there was anything wrong with the Fairfax tapes and they had somehow been ginned up, then the statement of Mr. Steele to his wife that you – you know, that these tapes are not accurate doesn't be – a jury could find was not obstructive because – I understand. Right. You know, I teach appellate advocacy, and one thing I tell students all the time is it isn't what you think. It's what the judges think that matters. So hear their questions and answer them, and, again, I apologize for any shortcomings in that regard. Thank you. Thank you very much for – I think it's an important case. It was a very good discussion, and you made some good points. Thank you, Your Honor. Yeah.  Not so lucky, Your Honor. May it please the Court. Serena Case Hargrove representing the United States. The first issue is primarily a legal issue, and we spent a lot of time talking about it this morning already. I think it would be helpful to put it in the factual context in which the district court faced the question of ineffective assistance of counsel. The district court had two new trial motions before it, Mr. McAllister's motion and then a motion filed by Mr. Hoyt who came in to replace Mr. McAllister. And that was a 49-page supplemental motion in which Mr. Steele alleged ineffective assistance both by Mr. Piven, who's the head of the Federal Public Defender's Office, based on allegations that he was having mental issues and substance abuse issues, and also Mr. McAllister on the basis that he was having the bankruptcy issues and that he was being disbarred. So the district court wasn't just facing a neatly packaged small question the way it's been packaged now for this Court. The district court was looking at a very long and intricate brief alleging ineffective assistance by both counsel. For that reason, and I would have to agree, the district court didn't give us a lot in its order, but I don't believe this is a case, like some of the cases that defendant has cited, in which judicial efficiency would benefit from holding a hearing now, holding a hearing at the district court level. There are one of the the district court knew that he could have had the hearing at that time based on what's in the record? Your Honor, I believe the district court did know. Judge Windmill is an extremely experienced judge, and he has actually held a hearing on, he's one of the rare judges who has a published opinion on an ineffective assistance of counsel claim in a Rule 33 motion, the Moses case, which our office did too. So, you know, this is a very experienced district court judge. He has addressed that issue before. Prior to this case? Yes, Your Honor, in 2006. Moses is 2006? Yes, Your Honor, and we cited it in our brief. Thank you. So there is every reason to believe that Judge Windmill does generally know that he has this discretion. He was responding to a 49-page supplemental motion that raised. But district court judges do that all the time. Absolutely. This is a very experienced judge. He can respond to a 49-page motion. What's your point? My point, Your Honor, is that I think this very experienced judge, based on the very short analysis he did, seemed to not have a tremendous concern that this was a travesty the way, say, the judge in the Jensen case did. So it's not the United States' position that this would never be appropriate for a judge to say, stop the action. I'm going to have a hearing right now. Because, after all, I think opposing counsel makes a really excellent point. If a judge says, I'm going to not hear it, that means somebody is going to be incarcerated for a very long time waiting for this motion. And it's not just the delay. I mean, it's not just the defendant sitting in jail, but there's also the problem of witnesses forgetting or you lose them or so on and so forth. So where should he have drawn that line? I believe that the precedent suggests several different things. In Jensen, the case that defense counsel cites, the Court notes that in the infrequent instances where ineffective assistance of counsel is apparent from the trial proceedings, it may promote judicial efficiency to address it immediately. And that's what the Court chose to do there. In Brown, in the Second Circuit, the Court gave some excellent guidance as well, and that was if a new attorney has already been appointed, which is one factor in defense's favor here, certainly, but then also if the Court's own observations of the trial and the proceeding give some substantiation to the claim, if that claim is spatially plausible. And here, Your Honor, I just don't believe that the second requirement of Brown is met. I would have to agree that the first was. We had new counsel. So I absolutely agree that there are circumstances where the Court should consider, but I don't believe these were the circumstances. Kagan. Opposing counsel's response to that is one he just gave when we let him get out a word edgewise, and that is that the trial court judge in this case said, hey, this was a key witness, and the reason he's not here is because you didn't subpoena him. And surely you're going to concede that this tape that we're talking about was exceptionally damaging to Mr. Steele. Absolutely not. Exceptionally damaging. It was very damaging. So what do I do about the fact that the trial court judge said, hey, this is a key witness? Your Honor, I don't know that the trial court judge said that Dr. Papsen, and I believe it's Papsen, was a key witness. And I would certainly disagree that Dr. Papsen was a key witness. I've read his testimony numerous times, and I've spoken with the trial counsel who were there. And I thought about it today as I was working out in the gym, and my earphones were in, and I was getting a clicking noise from the earphones as I jogged. That's what Dr. Papsen testified to, was that there were these little intervening clicks, but he acknowledged there was no editing of the tapes. He acknowledged that the tape was not being edited. And that's what the trial hearing, the Daubert hearing. Yes, Your Honor. Yes. So there were two witnesses offered by the defense, forgive me, experts offered, and one of them was willing to say that this testimony, forgive me, that the trial tape introduced a trial that involved Mr. Fairfax may have been fabricated. That's an overstatement. I'm certain of that. At any rate, that witness was not deemed qualified. Yes, Dr. Walsh. And that's not on appeal. That's not on appeal. Okay. And this other witness couldn't go that far. Correct. He would say that he could hear, I think the word was artifact noise. Yes, Your Honor. Artifacts. 351 artifacts. Well, if it's such a minor point, what do I make of the trial court's statement that it was a key witness? You're telling me if I look at the record I won't find that there? Your Honor, let me grab my record. Oh, sure. Thank you. 236, counsel. Yes, that ER 236, there's four pages on the ER page. Yes, Your Honor, he does refer. He's discussing at some length either this is not a critical witness, and I'm right now at the top of page 236, page 1360. Either it was not a critical witness, there was no serious issue about cross-examination, and it was essentially just done by consent. He's talking about previous situations. Or, you know, they're talking about whether to have the videoconference. And so, yes, the district court does say a key defense witness, an expert witness testified from a remote location. I don't know that that is the district court's evaluation of Dr. Papsen's testimony and his potential effect on the case. I believe the reason for not letting him testify by video, is that what he's doing there? That was one of the reasons, yes. They had all kinds of technical problems also trying to match up the yes. So I don't believe that that is a fair assessment of the district court's calculation of what Dr. Papsen's testimony would have had, the effect it would have had. What about Mr. Reardon's point, and it's a fair one, that at this stage where it's being appealed, his client is entitled to counsel, and if this is passed over until the record is more fully developed later, he may not have counsel. And is that not something we should focus on and understand that his client would be disadvantaged by that? Your Honor, I seriously doubt that is a big concern in this case, but it's certainly a valid concern for other cases. Why not in this case? Mr. Steele hasn't had problems retaining counsel and paying for things. He apparently has a number of supporters. He refers to them. They were willing apparently to pay to cancel Dr. Papsen's Polynesian vacation, which would have been a hefty sum. So I believe there's evidence in the record suggesting that that wouldn't be a huge concern here, although, of course, people's financial situations change. Well, this is an atypical defendant. This person is a criminal defense attorney. But, of course, whatever we do in this case, to Judge McGeeh's point, is going to apply to all kinds of people who don't have nearly the ability to defend themselves that your client has, this defendant has. So what do we do about that? Yes, Your Honor. I think there has to be a careful balancing. And so there isn't a lot of precedent in this area about what guides the district court in its discretion. But, again, I think the Second Circuit in Brown has come up with some good criteria. And I think, you know, there has to be some reasonable balance between the district court's discretion and its ability to have to manage a whole second big proceeding after a big trial. And there probably needs to be a good reason to do that. If we adopted the Second Circuit, well, would we have to send this case back to Judge Windmill to look to see whether he needs to exercise his discretion in the first instance? Your Honor, that just depends on the interpretation the Court gives to his admittedly very brief statement about what this was not proper in this case, because a record needed to be developed. The government, again, submits that we believe that Judge Windmill recognized he had discretion and that this was appropriate, but we have to acknowledge it's brief. And so if the Court concluded that that wasn't sufficient to show he had discretion, then certainly the Court could remand for an exercise of his discretion. I don't believe, Your Honor, that that is necessary. The case that I cited at length a minute ago, the authority cited in Roths, talks about taking this up in direct appeal. Is the Moses case an instance where Judge Windmill did this, entertained an IAC claim in the context of a motion for a new trial pre-judgment? Yes, Your Honor. Yes, Your Honor. I've had some lengthy conversations with trial attorneys in my office, also, about this need to balance, because there are going to be times, I believe, when a – when an evidentiary hearing is going to be necessary. And the trial attorneys have serious concerns about, I believe, what Judge Pregerson was suggesting before, that this is a situation where a crafty defense attorney working with a crafty defendant could manipulate things to make the entry of judgment to delay it. But – and I do think there are some concerns there in terms of the delay in the entry of judgment and the interest in finality of judgments and so on. No, Your Honor. Counsel, what about opposing counsel's argument that there's nobody better situated than the trial court judge who watched that trial to decide the motion for new trial? I mean, some of it is just intangible. It's – it doesn't translate very well when it's on paper or even when a new trial court judge, a different trial court judge, hears the motion. Yes, Your Honor. I mean, it's certainly common in 20 to 55 motions to have the same judge, but I recognize that might not happen. And again, I think if there is a really good reason, if there's a real concern that's evident from the record, and the court should inquire into it at that time and there are good reasons for that, then that makes a great deal of sense. But if there aren't, and defendant is arguing that every counsel who's represented him has been ineffective and so on, there may be good reasons to defer that, too. Did Judge Windmill inquire? I mean, I'm sure you've read the 49-page motion, but was there any inquiry? Any inquiry specifically about the ineffective assistance of counsel issue? I don't believe so, Your Honor. So your understanding is that what Judge Windmill considered was the paper, the written motion? Yes, Your Honor. Including Mr. McAllister's affidavits, which I would note, too, I think they're very interesting, because he again takes issue, he took repeated issue with the problem that Mr. Steele had been consulting attorneys who weren't representing him, and those conferences had been recorded per prison policy. And that's the first half of his affidavit, is complaining about that, and he says he was ineffective because of that. The second part, he says, you know, I wasn't in my – I wasn't at my best, and Mr. Steele was entitled to my best. And while I understand that Mr. McAllister would feel that way and Mr. Steele would  And that is a very tough standard. It doesn't require counsel like Mr. McAllister with 35 years of experience to be at his best. And I recognize defense counsel criticized the government's brief for raising all of the – just the statistics regarding Mr. McAllister's representation, but they are pretty impressive. Mr. McAllister did a very thorough job at trial, and the district court had just sat there and watched that for two weeks. This had been, you know, the chronic case talks about the adversarial testing. This had been tested adversarially, this case. But he didn't subpoena his witness. No, and there are some good strategic reasons for not doing that, according to Mr. Amendola's affidavit, too, that he didn't want Dr. Papsen, who was already – you can read it from the – even from the transcript, fairly testy. He didn't want him to be a hostile witness. And they didn't believe he was going to be allowed to be called. He didn't want him to be a hostile witness. Mr. McAllister had expressed concern to Mr. Amendola that if they subpoenaed Dr. Papsen and forced him to stay home from his Polynesian vacation, that he might be a hostile witness. So the reason they thought that they might – they're trying to – as I understand opposing counsel's argument, they're trying to walk this fine line, and there's  They didn't want to make him mad because he had these vacation plans. But there was – they're trying to respond, I think, to a provisional or a conditional ruling that came out of the Daubert hearing, right? It wasn't clear whether this person was going to be able to testify or not. Correct. And what happened at trial, which wasn't unknown, how that played out was going to determine whether there was adequate foundation for this witness to testify? Correct. And interestingly, the witness – I don't know whether he did this on his own or whether Mr. McAllister instructed him, but he brought all of his materials on vacation with him. And they may have – I don't know if they made some of the records. Has that been in the record? Yes. That is in his affidavit, I believe, in Dr. Papsen's affidavit. I'll go back and look. Thank you. So your point was – I interrupted you. Your point was he took the stuff with him on vacation. Yes. We don't know. It's not in the record whether Mr. McAllister instructed him to do that and they thought they could do this video arrangement or, you know, or what. But it has been, Dr. – Judge Winmull has – is very flexible in terms of technology in the courtroom, and he has allowed some testimony by video hearing before. So that may not have been unreasonable of Mr. McAllister. I see my time is up. If there are no further questions, the government submits and requests affirmance. May I have one minute, Your Honor? Sure, sure. I know everybody says that, but I'll do it that quickly. The government has referred to Judge Winmull's 2006 case where he apparently heard an IAC claim of prejudgment, but he relied on a 211 case, a 2011 case, Ross, which, quite frankly, he misread, to come up with a rule that is simply incorrect. It is not the only proper way to go. And I think we have to review this ruling and not say, well, he may have gotten it wrong in this case, but it was all right because he got it correctly in one in 2006. The other thing is, is the government argues that when Judge Winmull says this was a key defense witness, it didn't mean it was a key defense witness. When he says proper, it didn't mean proper. I think we have to deal with the words of the judge and take him quite literally. Is that why he didn't allow the witness to testify via video, counsel, because he was important? There were some technical problems, but he thought it would be very unfair to the government to have to cross-examine a key defense witness by means of videotape. The government's right to confront should prevail there. I've only heard one reason given why Judge Winmull gave none. Judge Pregerson said, well, 2255, you have magistrates involved as an apparatus. I think that Judge Kristin is correct that in a case like this, it's going to have to be the district court judge who viewed the evidence who's going to make the call. So Judge Winmull didn't give that reason, and I don't think that would be a valid reason. And finally, the government seems to suggest that, well, you give the back of your hand and relegate to 2255 claims which are less impressive than others. Number one, I think this is a very strong claim, given what the judge said about the defense witness, but why in the world would we want weaker claims relegated to 2255 where we'd have a whole collateral process when, if they're weaker, they can be resolved quickly on the Rule 33 procedure. Thank you very much, Your Honor. You know, you see, the whole problem is that the great writ is the great joke. You're not going to get an argument with me on that, Your Honor. There's so many barriers placed out there that all probably one or maybe two in a thousand are ever granted. Do you know that? I know that well, and actually, Judge Kristin, in a prior argument I heard, referred to the problems created by AEDPA, or the hurdles created by AEDPA. Well, you have AEDPA considerations on the 2255. Why is it fair to force a defendant to try, without counsel, to hurdle those obstacles when it can be heard with counsel on a Rule 33? Thank you. That's a good argument. All right. The matter is submitted.
judges: Pregerson, Murguia, Christen